```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

------------------------------------
                                    :
   ASHLEY JOYCE,                    :
                                    :
         Plaintiff,                 :  CIVIL NO. 11-6441 (NLH)
                                    :
      v.                            :
                                    :         OPINION
   COMMISSIONER OF                  :
   SOCIAL SECURITY,                 :
                                    :
         Defendant.                 :
                                    :
------------------------------------
```

**APPEARANCES:**

ROBERT ANTHONY PETRUZZELLI
JACOBS, SCHWALBE & PETRUZZELLI, PC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003
    *Attorney for Plaintiff*

SIXTINA FERNANDEZ
SPECIAL ASSISTANT UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
26 FEDERAL PLAZA, ROOM 3904
NEW YORK, NY 10278
    *Attorney for Defendant*

**HILLMAN**, District Judge

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of

Plaintiff for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her January 18, 2008 application for benefits for an alleged onset of disability on March 29, 1989.  For the reasons stated below, this Court will affirm the ALJ's decision.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on March 29, 1989 with gastroschisis, which is a congenital condition that caused her to be born with her intestines outside of her body.  Immediately after her birth, Plaintiff received surgery to close her abdominal cavity, and as a result, she has experienced chronic abdominal pain and other related side-effect ever since.  When she entered school, she scored low on reading and intelligence tests, and was diagnosed with a learning disability.  Other than working as a part-time cashier at two fast-food restaurants in 2009 and 2010, Plaintiff has not engaged in any substantial employment because she claims that her chronic pain precludes her from working.

After a hearing before an ALJ, it was determined that Plaintiff was not disabled.  Plaintiff appealed the decision, and

the Appeals Council denied review rendering the ALJ's decision final. Plaintiff now seeks this Court's review.

**II. DISCUSSION**

    **A.    Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).

"[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an

4

ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such

severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

6

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One).  The ALJ next found that Plaintiff's chronic pain was severe (Step Two).  The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (Step Three).  At Step Four, the ALJ found that even though Plaintiff was not capable of performing her previous job

7

as a cashier, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform unskilled, sedentary work with a sit/stand option (Step Five).

Plaintiff presents four arguments for review: (1) the ALJ erred in determining Plaintiff's residual functional capacity; (2) the ALJ improperly discounted Plaintiff's testimony of disabling pain and limitations; (3) the ALJ failed to give proper weight to her treating physicians; and (4) the ALJ did not properly assess Plaintiff's ability to perform the jobs suggested by the vocational expert.

With regard to Plaintiff's arguments that the ALJ improperly discounted Plaintiff's testimony about her pain and limitations, and that the ALJ did not give proper weight to Plaintiff's treating physicians, the record demonstrates otherwise. In her decision, the ALJ fully credited Plaintiff's testimony about her pain and limitations, and credited her medical evidence--over the state agency examiners' findings, which the ALJ gave no weight[1]--to determine that Plaintiff

---

[1] "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." Diaz v. Commissioner, 577 F.3d 500, 505-06 (3d Cir. 2009) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). When "a conflict in the evidence exists, the ALJ may choose whom to credit," but the ALJ "cannot reject evidence for no reason or for the wrong reason." Id. citation omitted). In this case, the ALJ found that Plaintiff's "medically determinable impairments could

suffers from severe limitations due to her abdominal condition, individually, and her cognitive impairments, in combination with her physical ailments. (R. at 81.) This finding quickly negates Plaintiff's second and third arguments for reversal of the ALJ's decision.

Plaintiff's first and fourth arguments require a closer examination of the ALJ's decision. Plaintiff claims that the ALJ did not properly assess her RFC by finding that she was capable of performing unskilled, sedentary work. Plaintiff also claims that when the ALJ made that determination, she improperly evaluated Plaintiff's ability to perform the jobs suggested by the vocational specialist.

---

reasonably be expected to cause the alleged symptoms." (R. at 81.) The ALJ continued,

> Out of an abundance of caution, I agree, moreover, that the allegations of chronic abdominal pain warrant the inclusion of both of an appropriate sit/stand option and the postural limitations . . . . In reaching this conclusion, I give no weight to the conclusions of the State agency medical consultants [who] opined that the claimant's impairments did not preclude the performance of a full range of light work on a regular and continuing basis. These non[-]treating, non[-]examining consultants did not enjoy the opportunity to review the entirety of the medical evidence. Moreover, they did not adequately explain the decision to disregard the [claimant's treating physician's] statement, which I give great weight.

(R. at 81.)

Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

In determining that Plaintiff was capable of performing unskilled, sedentary work, the ALJ specifically detailed Plaintiff's complaints and resulting limitations on her physical and mental abilities. Plaintiff takes issue with how the ALJ discounted and discredited some of the evidence, arguing that the ALJ had no basis in the record to do so.[2] Even accepting as

---

[2] For example, the ALJ stated that the severity of Plaintiff's condition was discounted by her moving to an isolated area of North Carolina and away from the high quality treatment of Children's Hospital of Pennsylvania. Plaintiff argues that the ALJ's opinion is contradicted by Plaintiff's reasoning for moving to North Carolina--because she could rarely, if ever, be left alone, her grandparents were better able to provide her with daily, in-home care in their North Carolina home. The ALJ, however, addressed this very argument in her decision: "Contrary to her testimony that the family does not like to leave her alone at any time, the claimant's gynecological records actually indicate that she became pregnant twice in that year." (R. at 82.)

10

true Plaintiff's argument that the ALJ made unsupported assumptions about some of Plaintiff's testimony and evidence, other evidence relied upon by the ALJ, however, supports the ALJ's rejection of Plaintiff's claim that she is totally incapable of performing any jobs in the national economy.

The ALJ noted that even fully crediting her complaints about how her physical condition limited her abilities, Plaintiff's daily activities (going to the store, movies and library, playing with her one-year-old cousin outside, doing some light household cleaning), the infrequency of outpatient treatment after June 2008, the absence of significant weight loss, the limited use of home remedies for treatment, a lengthy car trip from North Carolina to New Jersey, and the maintenance of a healthy pregnancy, along with the state agency psychological consultant's report, all supported a finding that she could physically and mentally meet the basic demands of sedentary, unskilled work.  Thus, even though the ALJ found some faults with Plaintiff's testimony, other evidence substantially supports the ALJ's finding regarding Plaintiff's RFC.[3]  See

---

[3] The ALJ is required to consider all of Plaintiff's impairments in combination when making the RFC determination.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your

Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); 20 C.F.R. § 404.1529(c); SSR 96-7p (all explaining that the Social Security regulations provide that allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if she does not find it credible as long as she explains why she is rejecting the testimony).

As to the specific jobs Plaintiff was found to be capable of performing, Plaintiff contends that the ALJ erred in not being more specific in the "sit/stand" option for sedentary

---

residual functional capacity."). Plaintiff argues that the ALJ erred by not considering her learning disability in making her RFC decision. Plaintiff also argues that the ALJ erred by completely disregarding the doctors who provided psychological evaluations.

    There are two problems with Plaintiff's arguments. First, the ALJ did not find Plaintiff's learning disability, standing alone, to be a "severe" impairment, instead finding it "moderate" after evaluating four functional areas. (R. at 78-79.) As a result, the determination of whether Plaintiff is disabled cannot be based solely on her learning disability or mental impairments. Second, even though the ALJ did not find that Plaintiff's cognitive function was severe, the ALJ recognized Plaintiff's limitations in this area, and found that her mental limitations, in conjunction with her physical disabilities, reduced her RFC to unskilled work: "[T]he record demonstrates that this complex of symptoms could reasonably be expected to cause a moderate difficulty in maintaining concentration, persistence, or pace." (R. at 78, citing 20 C.F.R. §416.920a(d)(1).) Thus, the ALJ properly considered Plaintiff's physical and mental limitations in combination when making the RFC determination.

12

work.[4]  The ALJ found that Plaintiff's ability to perform substantially all of the requirements of the sedentary level of work was impeded by additional limitation - namely, "the inclusion of a sit/stand option."  (R. at 81, 84.)  Thus, the ALJ sought the assistance of a vocational specialist, who suggested that Plaintiff could perform the duties of a ticket checker and a lens installer, which are unskilled, sedentary positions that offer a worker the ability to sit or stand while performing her job duties.  The ALJ found that because it is "wholly within the discretion of an individual worker whether or not to sit or to stand for the majority of each day," the sit/stand option was met.  (R. at 85.)  Plaintiff contends that this finding was in error because the ALJ never determined the

---

[4] The Regulations explain, "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."  20 C.F.R. § 404.1566(b).  In making that determination, an ALJ is required to take notice of reliable job information available from various governmental and other publications, such as the Dictionary of Occupational Titles, County Business Patterns, Census Reports, Occupational Analyses, and Occupational Outlook Handbook.  Id.  The ALJ may also use the services of a vocational specialist.  Id.  A vocational specialist, when presented with a hypothetical claimant mirroring the relevant impairments of the current disability applicant, can offer specific examples of available jobs or opine on the applicant's ability to perform a certain range of work.  Consultation with a vocation expert is also encouraged when it must be determined whether a claimant is capable of performing sedentary work.  See SSR-96-9p.

13

frequency with which the Plaintiff must alternate sitting and standing, and because most unskilled jobs do not offer a worker the free choice of when to sit or stand.  Plaintiff's arguments are unavailing.

Even though it is true that the jobs in which a person can sit or stand with a degree of choice are typically professional and managerial ones, and "unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will," unskilled, sit/stand option jobs do exist in the national economy.  SSR 83-12.  When presented with a claimant who requires the ability to sit and stand at will in an unskilled job, the Regulations require that an ALJ consult a vocational specialist "to clarify the implications for the occupational base."  Id.

In this case, the ALJ asked the vocational specialist to consider all of Plaintiff's limitations, including her need to sit and stand as she needs to in a unskilled, sedentary job.  The vocational specialist identified two jobs--ticket checker and lens installer--that matched Plaintiff's abilities as described by the ALJ.  Under these circumstances, any lack of specificity as to the frequency of sitting or standing is immaterial, as the worker's ability to sit and stand at will while performing these jobs allows the worker to choose for

14

herself the frequency that corresponds to her own needs. <u>See, e.g.</u>, <u>Barnes v. Astrue</u>, 2011 WL 6371005, *4 (M.D.N.C. Dec. 20, 2011) ("[E]ven if the Court found SSR 83-12 required the ALJ to specify the frequency of Plaintiff's need to sit and stand, the ALJ's finding that Plaintiff requires a 'sit/stand option' would be adequate.  A residual functional capacity that states a claimant requires the option to sit or stand 'clearly contemplate[s]' that the claimant requires the option to sit or stand at will during the work day.  Because the ALJ included in his hypothetical question to the vocational expert the limitation that Plaintiff required a sit/stand option, it is also reasonable to find that the vocational expert understood that the sit/stand option meant that Plaintiff could sit or stand whenever she wanted.") (citing <u>Nesbitt v. Barnhart</u>, No. 03 C 8308, 2004 WL 2092006, at *7 (N.D. Ill. Sept. 14, 2004) ("[T]he frequency and duration of the sit/stand option implicitly is an indefinite period of time — Claimant could either sit or stand as often as he would like and for however long as he would like.")).

Consequently, the ALJ did not err in finding that Plaintiff's severe limitations from her physical condition and subjective pain, in combination with her moderate cognitive impairments, still rendered her capable of performing sedentary, unskilled work with a sit/stand option.

15

## III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled is supported by substantial evidence. Accordingly, the decision of the ALJ is affirmed. An accompanying Order will be issued.

Date:  December 26, 2012          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.